## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| RASOUL NICHOLSON, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| LEIDOS, INC. | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Rasoul Nicholson ("Nicholson") brings this class and collective action to recover unpaid wages and other damages from Leidos, Inc. ("Leidos").

2.      Leidos employed Nicholson as one of its Straight Time Employees (defined below) in multiple states, including in Massachusetts.

3.      Leidos pays Nicholson and its other Straight Time Employees by the hour.

4.      Nicholson and the other Straight Time Employees regularly work more than 40 hours a workweek.

5.      But Leidos does not pay them overtime wages.

6.      Instead, Leidos pays Nicholson and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked over 40 in a workweek (a practice known as "straight time for overtime").

7.      Indeed, Leidos uniformly misclassifies Nicholson and its other Straight Time Employees as independent contractors to avoid paying them overtime.

8.      But Leidos knows the Straight Time Employees are its hourly employees.

9.      And Leidos has never paid Nicholson and its other Straight Time Employees on a "salary basis" as required for any relevant overtime exemption Leidos might claim with respect to these employees.

10.     Leidos uniformly applies its illegal straight time for overtime pay scheme to Nicholson and its other Straight Time Employees regardless of any individualized differences.

11.     Leidos's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) and the Massachusetts Wage and Hour Law (MWHL) by depriving Nicholson and the other Straight Time Employees of the "time and a half" overtime premium they are owed for hours worked over 40 in a workweek.

### JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.     This Court has supplemental jurisdiction of the Massachusetts state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.     This Court has specific personal jurisdiction over Leidos because Leidos conducts substantial business in Massachusetts, including maintaining office locations in Framingham and Tewksbury, Massachusetts and employing employees (like Nicholson and the other Straight Time Employees) in the Commonwealth.

15.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

16.     Specifically, Leidos employed Nicholson and other Straight Time Employees in Bedford, Massachusetts, which is in this District and Division.

17.     During weeks Nicholson and other Straight Time Employees worked in Massachusetts, they were paid straight time for overtime.

**PARTIES**

18.     Nicholson worked for Leidos as a Training Specialist II from approximately March 2022 until December 2023.

19.     Nicholson worked for Leidos in Bedford, Massachusetts for several weeks in 2022.

20.     Throughout his employment, Leidos uniformly paid Nicholson straight time for overtime.

21.     Nicholson's written consent is attached as **Exhibit 1**.

22.     Nicholson brings this class and collective action on behalf of himself and all other similarly situated Leidos employees who Leidos paid under its illegal straight time for overtime pay scheme.

23.     Leidos misclassified each of these employees as independent contractors to avoid paying them overtime wages.

24.     Leidos pays each of these employees the same hourly rate for all hours worked, including those hours worked over 40 in a workweek, in willful violation of the FLSA and in violation of the MWHL.

25.     The FLSA Collective of similarly situated employees is defined as:

> **All individuals who worked for or on behalf of Leidos in the United States who were paid straight time for overtime at any time during the past 3 years ("FLSA Collective Members").**

26.     Nicholson also seeks to represent such a class under the MWHL pursuant to FED. R. CIV. P. 23.

27.     The Massachusetts Class of similarly situated employees is defined as:

> **All individuals who worked for or on behalf of Leidos in Massachusetts who were paid straight time for overtime at any time during the past 3 years ("Massachusetts Class Members").**

3

28.     The FLSA Collective Members and Massachusetts Class Members are collectively referred to as the "Straight Time Employees."

29.     Leidos is a Delaware corporation headquartered in Reston, Virginia.

30.     Leidos is registered to do business in the Commonwealth.

31.     Leidos maintains offices in Framingham and Tewksbury, Massachusetts.

32.     Leidos can be served through its registered agent: **C T Corporation System, 155 Federal Street, Ste 700, Boston, MA 02110**.

**FLSA COVERAGE**

33.     At all relevant times, Leidos was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

34.     At all relevant times, Leidos was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

35.     At all relevant times, Leidos was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

36.     At all relevant times, Leidos has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

37.     At all relevant times, Nicholson and the other Straight Time Employees were Leidos's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

38.     At all relevant times, Nicholson and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

39.     Leidos uniformly paid its Straight Time Employees the same hourly rates for all hours worked, including hours worked over 40 in a workweek.

40.     Leidos applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

41.     As a result of Leidos's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, includes Nicholson) did not receive overtime at the premium rates required by the FLSA.

42.     By paying straight time for overtime, Leidos did not pay its Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

43.     Leidos's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

44.     Additionally, Leidos uniformly failed to pay the Straight Time Employees for travel time.

45.     This resulted in Nicholson and the other Straight Time Employees not receiving wages owed to them for travel time during their normal working hours that kept them away from home overnight, in violation of the FLSA. *See* 29 CFR § 785.39.

### FACTS

46.     Leidos hold itself out as a "[k]ey player[] in government support, holding major contracts for civilian and defense agencies, including acquisition, delivery, and quantity agreements."[1]

---

[1] https://www.leidos.com/company/contract-vehicles (last visited March 28, 2024).

47.     One such contract Leidos holds is the Defense Healthcare Management System Modernization (DHMSM) contract from the Department of Defense.[2]

48.     The DHMSM "is a $4.3B initiative to deliver a state-of-the-market electronic health record (EHR) system to the Military Health System (MHS)."[3]

49.     In 2017, Leidos began implementing its EHR software in MHS facilities and continues this process at present.[4]

50.     To meet its business objectives, Leidos hires workers, like Nicholson and the other Straight Time Employees, who it assigns to MHS and Leidos facilities across the United States, including in Massachusetts, to train and support MHS medical providers in utilizing the EHR software.

51.     Leidos uniformly misclassifies Nicholson and the other Straight Time Employees as independent contractors to avoid paying them overtime for hours worked over 40 in a workweek.

52.     Indeed, Leidos has been sued multiple times in the past for the very straight time for overtime pay scheme alleged herein.[5]

53.     However, Leidos's response to these lawsuits was not to modify its unlawful pay practices to comply with relevant state and federal law.

54.     Rather, Leidos has continued unlawfully paying its employees straight time for overtime but has attempted to offload its liability for unpaid overtime wages onto various staffing companies, including, ALKU, Blue Ridge Federal Consulting, and Ecco Select.

---

[2] https://www.usaspending.gov/award/CONT_IDV_N0003915D0044_9700 (last visited April 4, 2024).

[3] https://www.leidos.com/markets/health/military-health/mhs-genesis-program (last visited April 4, 2024).

[4] https://leidos.widen.net/s/gqkwrrd8wh/pdf-dhmsm-partnership-for-defense-health-fs-digital (last visited April 4, 2024).

[5] *See e.g.*, *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017).

55.    Regardless of which staffing company Nicholson and the other Straight Time Employees receive their paychecks from, Leidos cannot offload its liability for unlawfully failing to pay Nicholson and the Straight Time Employees overtime for hours worked in excess of 40 in a workweek.

56.    Leidos controls all meaningful aspects of Nicholson's and the other Straight Time Employees' employment regardless of which staffing company happens to issue their paycheck.

57.    Leidos does not employ Nicholson and its other Straight Time Employees on a project-by-project basis.

58.    Rather, Leidos employs and treats Nicholson and its other Straight Time Employees just like regular employees.

59.    Leidos controls Nicholson's and its other Straight Time Employees' rate and method of pay.

60.    Leidos requires Nicholson and the other Straight Time Employees to submit their hours worked each workweek through the timekeeping system Leidos selects and utilizes.

61.    Leidos approves or disapproves these hours each week.

62.    Nicholson and the other Straight Time Employees are paid only for the hours Leidos approves.

63.    On a weekly basis Leidos refuses to approve hours submitted by Nicholson and the other Straight Time Employees.

64.    Leidos refuses to approve their hours for reasons including, the submitted hours are not for a compensable task according to Leidos policy, the hours exceed the number of hours Leidos has preapproved for a particular task, or even because the submitted hours do not utilize the proper Leidos task code.

65.     Leidos scrutinizes Nicholson's and the other Straight Time Employees' submitted hours in detail to ensure the hours conform with Leidos policies and procedures before approving the.

66.     And Nicholson and the other Straight Time Employees have little or no opportunity to experience a profit or loss related to their employment.

67.     Their income from their work is limited to their hourly rate.

68.     Nicholson and the other Straight Time Employees do not share in Leidos's financial success.

69.     Leidos controls Nicholson's and its other Straight Time Employees' schedules, assignments, and work locations.

70.     Leidos assigns Nicholson and the other Straight Time Employees to work at MHS and Leidos facilities across the United States.

71.     Nicholson's and the other Straight Time Employees' schedules and work locations could and did change unilaterally at Leidos's direction, for example:

**Subject: RE: Trip Cancelled for: Nicholson, Rasoul  -**

All,

Per the site, they want to keep the current RAD trainer, for next week which is why Mr. Nicholson was removed from the schedule.

Thanks
**Dianna Sharp | Leidos**
DHMSM Deployment Training Coordinator
Leidos Partnership for Defense Health (LPDH)
DoD Healthcare Management System Modernization (DHMSM)
Dianna.L.Sharp@Leidos.com



72.     Leidos pays for Nicholson's and the other Straight Time Employees' travel expenses, such as airfare and lodging.

73.     Leidos reimburses Nicholson and the other Straight Time Employees for other expenses incurred while traveling based upon expense reports they submit to Leidos.

74.     Leidos pays Nicholson and the other Straight Time Employees a per diem while they work away from home for food and incidentals.

75.     Leidos controls Nicholson's and its Straight Time Employees' work.

76.     Leidos requires Nicholson and its other Straight Time Employees to follow its policies, procedures, plans, protocols, and specifications.

77.     Nicholson's and the other Straight Time Employees' work must strictly adhere to the quality standards put in place by Leidos.

78.     Leidos requires that Nicholson and the other Straight Time Employees complete what Leidos terms "Continuous Learning," which is ongoing training they must complete, in the timeframe determined by Leidos.

79.     Nicholson and the other Straight Time Employees take direction from, and are supervised by, Leidos personnel.

80.     Nicholson and the other Straight Time Employees are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

81.     Nicholson and the other Straight Time Employees' daily and weekly activities are routine and largely governed by standardized plans, procedures, and checklists created by Leidos.

82.     Virtually every job function is predetermined by Leidos, including materials used to train and support the MHS medical providers, the Straight Time Employees' work schedule, and related work duties.

83.    Leidos is in the business of providing information technology training and support services for EHR software to MHS facilities.

84.    Nicholson and the other Straight Time Employees provide these services for Leidos.

85.    Without the job Nicholson and the other Straight Time Employees perform, Leidos would not be able to complete its business objective of implementing its EHR software in MHS facilities.

86.    The work Nicholson and the other Straight Time Employees perform is therefore an essential and integral part of Leidos's core business.

87.    Nicholson and the other Straight Time Employees rely on Leidos for work and compensation.

88.    Nicholson and the other Straight Time Employees cannot subcontract out the work they are assigned by Leidos.

89.    Nicholson and the other Straight Time Employees do not substantially invest in the materials required to complete the overall job to which they are assigned by Leidos.

90.    Rather, Leidos incurs the large-scale business and operating expenses like payroll, marketing, equipment, and materials.

91.    Nicholson and the other Straight Time Employees do not market their services while employed by Leidos.

92.    Leidos sets Nicholson's and the other Straight Time Employees' work schedules, which effectively prohibits them from working other jobs while working for Leidos.

93.    Nicholson and the other Straight Time employees are not engaged in an independently established trade, occupation, profession, or business of the same nature as the service they perform for Leidos.

94.     In sum, as a matter of economic reality, Nicholson and the other Straight Time Employees are Leidos's employees.

95.     And Leidos uniformly pays Nicholson and its other Straight Time Employees on an hourly basis.

96.     Nicholson and the other Straight Time Employees regularly work more than 40 hours a workweek.

97.     But Leidos does not pay them premium overtime wages.

98.     Instead, Leidos pays Nicholson and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked over 40 in a workweek.

99.     While exact job titles and job duties, as well as job location may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

100.     For example, Nicholson worked for Leidos as a Training Specialist II from approximately March 2022 until December 2023.

101.     As a Training Specialist II, Nicholson's primary responsibilities included providing training and support to MHS medical providers, based on training materials provided by Leidos, on how to properly utilize Leidos's EHR software, including how to properly schedule patients, input patient's demographic information, input notes into a patient's chart, update a patient's treatment plan, place orders, etc.

102.     Nicholson additionally provided assistance to these medical providers during the first 30 days the software would "go live" into use in each facility.

103.     Nicholson has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs.

104.    Nicholson's primary duties never included computer systems analysis, coding, programming, recommending hardware, or designing, testing, or modifying machine operating systems.

105.    Nicholson was Leidos's hourly employee.

106.    Specifically, Leidos paid Nicholson approximately $50 an hour.

107.    Nicholson reported his hours worked to Leidos each week.

108.    Leidos reviewed Nicholson's reported hours each week.

109.    After reviewing the hours, Leidos approved or disapproved the hours Nicholson submitted each week.

110.    Nicholson was only paid for hours Leidos approved.

111.    Leidos's records reflect the hours Nicholson submitted each week.

112.    Leidos's records also reflect the hours it approved or disapproved for Nicholson each week.

113.    Nicholson regularly worked more than 40 hours a week while employed by Leidos.

114.    For example, during the week of August 26 to September 1, 2023, Nicholson reported working 42 hours to Leidos:



115.    But Leidos regularly approved for payment fewer hours than Nicholson had actually worked in a workweek.

116.    In fact, Nicholson typically worked 10 to 12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

117.    Despite knowing Nicholson regularly worked overtime, Leidos did not pay him overtime wages for the hours he worked over 40 in a workweek.

118.    Instead, Leidos paid him under its uniform, illegal straight time for overtime pay scheme.

119.    For example, during the week of June 20 to June 26, 2022, Nicholson worked 67.5 hours, but was paid at his base rate of $50 an hour for all 67.5 hours worked:

| #5643 - Rasoul Nicholson 601/210/External | | | |
|---|---|---|---|
| **Earnings** | | | |
| | **Rate** | **Hours** | **Current** |
| Regular | 50.00 | 67.50 | 3,375.00 |
| **Gross Pay** | | | **3,375.00** |

120.    So, rather than receiving $75 an hour for each hour of overtime he worked, Nicholson received the same $50 hourly rate for all hours worked.

121.    Because of Leidos's uniformly applied straight time for overtime pay scheme, Nicholson never received the required "time and a half" overtime premium for the hours he worked over 40 in a workweek.

122.    Leidos pays its other Straight Time Employees according to the same straight time for overtime pay scheme.

123.    Like Nicholson, Leidos pays its other Straight Time Employees on an hourly basis.

124.    Like Nicholson, Leidos requires its other Straight Time Employees to report their hours to Leidos.

125.    Like Nicholson, the other Straight Time Employees are only paid for the hours Leidos approves.

126.    Just as Leidos maintains records of the hours worked submitted by Nicholson, it also maintains records of the hours worked submitted by the other Straight Time Employees and the hours Leidos approved and disapproved.

127.    And like Nicholson, Leidos regularly approved fewer hours than the other Straight Time Employees actually worked.

128.    Leidos's records show the Straight Time Employees regularly work more than 40 hours a workweek.

129.    Every Straight Time Employee worked more than 40 hours in at least one workweek during the last 3 years.

130.    Indeed, like Nicholson, the Straight Time Employees typically work 10-12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

131.    Despite knowing its Straight Time Employees regularly work overtime, Leidos does not pay them premium overtime wages.

132.    Leidos has never paid Nicholson and its other Straight Time Employees on a "salary basis."

133.    Leidos does not pay Nicholson and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

134.    If Nicholson and the Straight Time Employees work fewer than 40 hours, Leidos only pays them for the hours they actually work.

135.    Because Leidos fails to pay Nicholson and its other Straight Time Employees on a "salary basis," Nicholson and the other Straight Time Employees are non-exempt employees entitled to premium overtime wages.

136.    But Leidos does not pay Nicholson and its other Straight Time Employees premium overtime wages when they work more than 40 hours in a workweek.

137.    Instead, Leidos pays its Straight Time Employees the same hourly rate for all hours worked, including those worked over 40 in a workweek, in willful violation of the FLSA and in violation of the MWHL.

138.    Additionally, Leidos never pays hourly wages to Nicholson and its other Straight Time Employees for travel time to and from MHS and Leidos facilities across the United States.

139.    Leidos schedules Nicholson and the other Straight Time Employees to work at these facilities.

140. And Leidos makes the travel arrangements and pays for flights to these facilities and lodging while Nicholson and the other Straight Time Employees work at these facilities.

141. But Leidos does not provide hourly compensation for any travel time by Nicholson and the other Straight Time Employees (Leidos's "nonpayment of travel time policy").

142. Leidos uniformly applies this nonpayment of travel time policy to Nicholson and the other Straight Time Employees.

143. For example, Leidos made clear to Nicholson it would not pay him for any travel time:



144. And Nicholson and the other Straight Time Employees travel away from home overnight during their regular working hours.

145.     Leidos's uniform application of its nonpayment for travel time policy deprives Nicholson and the other Straight Time Employees of wages for travel time during their normal working hours for travel that keeps them away from home overnight. *See* 29 CFR § 785.39; 454 C.M.R. § 27.04(4).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

146.     Nicholson incorporates all other paragraphs by reference.

147.     Nicholson brings his claims as a class and collective action on behalf of himself and the other Straight Time Employees.

148.     The Straight Time Employees are uniformly victimized by Leidos's straight time for overtime pay scheme, which is in willful violation of the FLSA and in violation of the MWHL.

149.     The Straight Time Employees are uniformly victimized by Leidos's nonpayment of travel time policy, which is in willful violation of the FLSA and in violation of the MWHL.

150.     Other Straight Time Employees worked with Nicholson and indicated they are paid in the same manner, performed similar work, and are subject to Leidos's same illegal straight time for overtime pay scheme and nonpayment of travel time policy.

151.     Upon information and belief, the putative class of Straight Time Employees includes hundreds of members.

152.     Thus, the putative class of Straight Time Employees is so numerous that joining of all class members in one lawsuit is not practical.

153.     Based on his experience with Leidos, Nicholson is aware Leidos's illegal straight time for overtime pay scheme and nonpayment of travel time policy are imposed on the other Straight Time Employees.

154.     The Straight Time Employees are therefore similarly situated in the most relevant respects.

155.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

156.     Leidos uniformly misclassifies the Straight Time Employees as independent contractors.

157.     Additionally, any relevant exemption defenses would require Leidos to pay the Straight Time Employees on a "salary basis."

158.     Because Leidos fails the "salary basis" test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

159.     The only *relevant* inquiry is whether the Straight Time Employees worked more than 40 hours in a workweek (which, by definition, they did).

160.     Therefore, the specific job titles or precise job locations of the Straight Time Employees do not prevent class or collective treatment.

161.     Rather, Leidos's uniform straight time for overtime pay scheme and nonpayment of travel time policy render Nicholson and the other Straight Time Employees similarly situated for the purpose of determining their right to overtime pay.

162.     Leidos's records reflect the number of hours Nicholson and the other Straight Time Employees recorded working "on the clock" each week and the number of hours worked Leidos approved each week.

163.     Leidos's records also show it paid Nicholson and the other Straight Time Employees "straight time," instead of "time and a half," for their recorded hours of work in excess of 40 each workweek.

164.     Likewise, Leidos's records show it failed to pay the Straight Time Employees for their travel time away from home.

165.    The back wages owed to Nicholson and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

166.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Leidos's records, and there is no detraction from the common nucleus of liability facts.

167.    Therefore, the issue of damages does not preclude class or collective treatment.

168.    Nicholson's experiences are therefore typical of the experiences of the other Straight Time Employees.

169.    Nicholson has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent class or collective treatment.

170.    Like each Straight Time Employee, Nicholson has an interest in obtaining the unpaid wages owed under federal and/or Massachusetts law.

171.    Nicholson and his counsel will fairly and adequately protect the interests of the Straight Time Employees.

172.    Indeed, Nicholson retained counsel highly experienced in complex class and collective action litigation, such as this.

173.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

174.    Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries, and Leidos will reap the unjust benefits of violating the FLSA and MWHL.

175.    Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

176.    Indeed, if individual actions were required to be brought by each Straight Time Employee, the result would be a multiplicity of actions, creating a hardship to the Straight Time Employees, to the Court, and to Leidos.

177.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

178.    The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

179.    Among the common questions of law and fact are:

    a.    Whether Leidos applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

    b.    Whether the Straight Time Employees are non-exempt employees entitled to premium overtime wages;

    c.    Whether Leidos misclassified the Straight Time Employees as independent contractors exempt from the FLSA's and MWHL's respective overtime provisions;

    d.    Whether Leidos's straight time for overtime pay scheme satisfies the "salary basis" test;

    e.    Whether Leidos's straight time for overtime pay scheme deprived the Straight Time Employees of premium overtime wages they are owed under the FLSA and MWHL;

    f.    Whether Leidos's decision not to pay the Straight Time Employees overtime was made in good faith;

g.      Whether Leidos's decision not to pay the Straight Time Employees for travel that kept them away from home overnight was made in good faith; and

h.      Whether Leidos's violations of the FLSA were willful.

180.    Nicholson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

181.    As part of its regular business practices, Leidos intentionally, willfully, and repeatedly violated the FLSA and repeatedly violated the MWHL with respect to the Straight Time Employees.

182.    Leidos's illegal straight time for overtime pay scheme deprived Nicholson and the other Straight Time Employees of the premium overtime wages they are owed under Massachusetts and federal law.

183.    There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

184.    This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

185.    The Straight Time Employees are known to Leidos, are readily identifiable, and can be located through Leidos's business and personnel records.

### LEIDOS'S WAGE VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

186.    Nicholson incorporates all other paragraphs by reference.

187.    Leidos knew it was subject to the FLSA's overtime provisions.

188.    Leidos knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

189.     Leidos knew each Straight Time Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their hours worked each week.

190.     Leidos knew that the Straight Time Employees are its hourly employees.

191.     Leidos knew it paid the Straight Time Employees on an hourly basis.

192.     Leidos knew it paid the Straight Time Employees straight time for overtime.

193.     Leidos knew it did not pay the Straight Time Employees on a "salary basis."

194.     Leidos knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

195.     Leidos knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

196.     Leidos knew it needed to pass the "salary basis" test to qualify for any relevant exemptions it claimed with respect to the Straight Time Employees.

197.     Nonetheless, Leidos uniformly misclassified the Straight Time Employees as independent contractors to avoid paying them overtime wages.

198.     Leidos's decision to misclassify its Straight Time Employees as independent contractors was neither reasonable, nor was this decision made in good faith.

199.     Leidos's failure to pay its Straight Time Employees premium overtime wages was neither reasonable, nor was the decision not to pay these employees premium overtime wages made in good faith.

200.     Leidos knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, for travel time during their normal working hours that kept them away from home overnight.

201.    Leidos's failure to pay its Straight Time Employees for travel during their normal working hours that kept them away from home overnight was neither reasonable, nor was the decision made in good faith.

202.    Leidos knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

203.    Leidos knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme and nonpayment of travel time policy that deprived the Straight Time Employees of overtime wages at the proper premium rate in violation of the FLSA.

204.    Indeed, Leidos and affiliated entities have been sued previously by employees for failing to pay overtime wages in violation of the FLSA, including for the same illegal straight time for overtime pay scheme that is the basis of this class and collective action. *See e.g.*, *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

205.    Nicholson incorporates all other paragraphs by reference.

206.    Nicholson brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

207.    Leidos violated, and is violating, the FLSA by employing non-exempt employees (Nicholson and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

208.    Leidos's unlawful conduct harmed Nicholson and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

209.    Accordingly, Nicholson and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL**
**(MASSACHUSETTS CLASS)**

210.    Nicholson incorporates all other paragraphs by reference.

211.    Nicholson brings his MWHL claims as a class action on behalf of himself and the other Massachusetts Class Members pursuant to FED. R. CIV. P 23.

212.    At all relevant times, Leidos was a covered "employer" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

213.    At all relevant times, Leidos employed Nicholson and the other Massachusetts Class Members as covered "employees" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

214.    The MWHL requires employers, like Leidos, to pay non-exempt employees, including Nicholson and the other Massachusetts Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay for all hours worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

215.    Nicholson and the other Massachusetts Class Members are entitled to overtime pay under the MWHL.

216.    Leidos violated, and is violating, the MWHL by employing non-exempt employees (Nicholson and the other Massachusetts Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

217.    Leidos's unlawful conduct harmed Nicholson and the other Massachusetts Class Members by depriving them of the overtime wages they are owed.

218.    Accordingly, Nicholson and the Massachusetts Class Members are entitled to recover their unpaid overtime wages under the MWHL in an amount equal to 1.5 times their regular rates of pay, plus treble damages, as well as attorney's fees and costs. *See* M.G.L. 151 § 1B.

**JURY DEMAND**

219.    Nicholson demands a trial by jury on all Counts.

**RELIEF SOUGHT**

Nicholson, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Nicholson and his counsel to represent the interests of the Straight Time Employees;

d.    An Order pursuant to Section 16(b) of the FLSA finding Leidos liable for unpaid overtime wages due to Nicholson and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order pursuant to the MWHL finding Leidos liable for unpaid overtime wages due to Nicholson and the Massachusetts Class Members, plus treble damages in an amount equal to two times their unpaid wages;

f.    A Judgment against Leidos awarding Nicholson and the Straight Time Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and MWHL;

25

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: April 15, 2024.

Respectfully submitted,

**GORDON LAW GROUP LLP**

By: /s/ *Philip J. Gordon*
      Philip J. Gordon
      Mass. BBO# 630989
585 Boylston Street
Boston, Massachusetts 02116
Phone:     (617) 536-1800
Fax:       (617) 536-1802
pgordon@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone:     (713) 352-1100
Fax:      (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:     (713) 877-8788
Fax:      (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR NICHOLSON AND THE STRAIGHT TIME EMPLOYEES**